THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT BASHORE,** | : |
| | : CIVIL ACTION NO. 3:18-CV-425 |
| Plaintiff, | : (JUDGE MARIANI) |
| | : |
| v. | : |
| | : |
| **POCONO MOUNTAIN REGIONAL** | : |
| **POLICE COMMISSION, et al.,** | : |
| | : |
| Defendants. | : |

## **MEMORANDUM OPINION**

Here the Court considers the Motion in Limine of Defendants Relative to Improper and Unsupported Damages (Doc. 63) filed by Defendant PMRPC.[1] With the motion, Defendant PMRPC requests that the Court preclude Plaintiff from referencing or submitting evidence or argument on compensatory, punitive, or liquidated damages during jury selection, opening statement, trial, or during closing arguments. (Doc. 63 at 3.) For the reasons discussed below, the Court will grant Defendants' motion in part and deny it in part.

---

[1] The motion indicates that it is filed by "Defendants, (hereinafter referred to as "PMRPD Defendants"). (Doc. 63 at 1.) The docket shows that the parties entered a Stipulation on April 20, 2018, stipulating that the Pocono Mountain Regional Police Department ("PMRPD") was dismissed from the action with prejudice. (Doc. 10 at 1.) The Court accepted the Stipulation by Order of the same date. (Doc. 11.) Thereafter, Attorneys Harry Coleman and Owen Coleman represent only the Pocono Mountain Regional Police Commission ("PMRPC"). Thus, the Court considers this motion to have been filed by Defendant PMRPC.

## I. BACKGROUND

On December 28, 2018, Plaintiff filed the above-captioned action after he was terminated from his position as a police officer with the Pocono Mountain Regional Police Commission ("MPRPC"). (Doc. 1.) As set out in the Statement of Undisputed Material Facts contained in the Court's Memorandum Opinion addressing the Pocono Mountain Regional Police Commission's Motion for Summary Judgment (Doc. 34), Plaintiff sustained an on-the-job injury in July 2016, was unable to work for a period of time, and, upon his return to work, had to update his weapons qualification. (Doc. 50 at 2-3.[2]) More specifically, Plaintiff injured his right hip, right knee and right hand in a prisoner take down incident and was unable to work until he was returned to work on November 1, 2016. Sergeant David Poluszny, the Department's Firearms Instructor, was present for Plaintiff's November 2016 weapons qualification efforts and was aware that Plaintiff was qualifying in November 2016 because he had been returned to work on November 1, 2016.

Plaintiff was told by Sergeant Poluszny that he failed two weapons qualification attempts on November 2, 2016, and that he failed on November 3, 2016. Plaintiff was not told his scores. After Chief Wagner was notified that Plaintiff failed the weapons qualifications, Plaintiff was placed on light duty. Chief Wagner's Record of Employee Conference dated November 4, 2016, does not state that Plaintiff failed the test for not

---

[2] Additional background information is taken from the Summary Judgment Memorandum Opinion's Statement of Undisputed Material Facts (Doc. 50 at 2-11) unless otherwise cited in the text.

2

attaining an 80% score (240) on his weapons qualification. Plaintiff testified that Chief Wagner told him he would have to obtain outside training by the National Rifle Association at his own expense.

Plaintiff was put on desk duty from November 7, 2016, to November 11, 2016, and then returned to the range for a qualification attempt with Sergeant Posluszny. Plaintiff was told he had failed again and had scored 236. Plaintiff said he only needed a 225 (75%), but Sergeant Posluszny told him he needed a 240 (80%). Plaintiff testified that he has never seen any document at the PMRPD that indicates a minimum pass/fail test score is 225, the MPOETC standard.

Plaintiff was removed from duty on November 16, 2016, by Chief Wagner on the alleged basis that he did not pass his weapons qualification pursuant to Policy 6-3 (Weapons Qualification), Subsection (III)(E)(5). An executive session of the Commission was held on the same day. Chief Wagner's letter states that "the outcome of the meeting was that we are bound by policy as set." (Doc. at 5 (quoting Plaintiff's Counter-Statement of Material Facts ("PCSMF") Doc. 41 ¶ 19).) The only written policy set by the Commission was under PMRPC Policy 6-3 (Pl.'s Ex. #10 (Doc. 43-10)) and PMRPC Policy 5-1 (Pl.'s Ex #5 (Doc. 43-5)). The department's alleged unwritten policy of a 240 passing score, which differed from MPOETC standard of 225, was not a written a policy of the Commission at the relevant time. The Commission required Plaintiff to successfully qualify within thirty (30) days after having received remedial firearms training from an outside source. Chief

3

Wagner's letter to Plaintiff dated November 16, 2016, relieving him of duty for allegedly failing his weapons qualification test does not state that Plaintiff failed the test for not attaining an 80% score on his weapons qualification. Chief Wagner testified that being relieved of duty means Plaintiff was on unpaid status and was not to report to work.

Plaintiff returned to his doctor on November 17, 2016, and was taken out of work again. He provided the work restriction to Chief Wagner who admitted that he would have been aware that the Plaintiff was placed back on full restrictions the day after November 16, 2016, by his doctor for acquired trigger finger. He testified that he did not recall any discussions with Plaintiff as to how he would undergo remedial firearms training within 30 days based on his medical restrictions specifically for his right hand, and he stated there was no policy for such a scenario.

Plaintiff's counsel sent a letter to the PMRPD dated November 23, 2016, enclosing a copy of a Petition for Penalties filed with the Pennsylvania Department of Labor & Industry, Bureau of Workers' Compensation filed on November 23, 2016, alleging that Defendant refused to pay benefits to the Claimant and instead informed him that his claim was denied.

A Loudermill Hearing was held on November 23, 2016. Defendant's Loudermill Hearing Notice to Plaintiff notified him that the issues to be addressed were: (1) Policy 6-3 Weapons Qualification, and (2) Failure to qualify with your primary service handgun on 11/1/16, 11/2/16, 11/3/16 and 11/11/16.

Plaintiff was terminated on December 26, 2016, although he had been out of work due to his work injury from November 17, 2016, through his date of termination. He was fifty-eight (58) years old at the time and had twenty-three (23) years of continuous employment and service with the PMRPC. Sergeant Poluszny testified that it was the first time a police officer did not qualify and was terminated. (PCSMF Doc. 41 ¶ 34; DAPCSMF Doc. 49 ¶ 34.)

At the time of his termination, Plaintiff was less than two years from his retirement eligibility for being over 50 years of age and having 25 years of service. As such, he would have been entitled to Pension Benefits due to his age being over 50 and having attained 25 years of service. Plaintiff would also have been entitled to Post-Retirement Health Care at 50% premium.

On January 4, 2017, an Order was issued by the Honorable Alan Harris, Workers' Compensation Judge, stating the following: "AND NOW, following a hearing which took place on December 28, 2016, and upon finding that Claimant's benefits were suspended in violation of law, it is ordered that Claimant's benefits be reinstated as of October 12, 2018." (PCSMF Doc. 41 ¶ 29; DAPCSMF ¶ 29.)

In the Court's March 23, 2020, Memorandum Opinion (Doc. 50), the Court granted summary judgment on Plaintiff's wrongful discharge claim and denied summary judgment on his Age Discrimination in Employment Act claim. (Doc. 50 at 27.) Therefore, two claims remain—Count I Age Discrimination in Employment Act claim against the Pocono Mountain

5

Regional Police Commission and Count III Breach of Duty of Fair Representation claim against Pocono Regional Police Officer's Association which was not the subject of a summary judgment motion. (Doc. 1 ¶¶ 31-43, 54-67.)

Trial is set to commence on September 20, 2021. (Doc. 97.) The parties have filed numerous motions in limine (Docs. 57, 61, 63, 65, 67, 69), including Plaintiff's motion at issue here, which are all ripe for disposition.

## II. STANDARD OF REVIEW

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *United States v. Tartaglione*, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017). A court may exercise its discretion to rule in limine on evidentiary issues "in appropriate cases." *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Nevertheless, a "trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *Tartaglione*, 228 F. Supp. 3d at 406. "[I]n limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3, 120 S. Ct. 1851, 146 L. Ed. 2d 826 (2000). The Supreme Court has long recognized that "[a] reviewing court is handicapped in an effort to rule on subtle evidentiary questions outside a factual context." *Luce v. United States*, 469 U.S. 38, 41 (1984). Thus,

a district court's ruling on a motion in limine "is subject to change when the case unfolds." *Id.* While this is particularly so if the actual testimony at trial differs from what was anticipated in a party's motion in limine, but "even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Id.* at 41-42.

Further, while motions in limine may serve as a useful pretrial tool that enables more in-depth briefing than would be available at trial, a court may defer ruling on such motions "if the context of trial would provide clarity." *Frintner v. TruePosition*, 892 F. Supp. 2d 699, 707 (E.D. Pa. 2012). Indeed, "motions in limine often present issues for which final decision is best reserved for a specific trial situation." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 518 n.10 (3d Cir. 1997). Thus, certain motions, "especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context." *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013). Moreover, "*pretrial* Rule 403 exclusions should rarely be granted. . . . [A] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990) (emphasis in original).

## III. ANALYSIS

With the motion, Defendant PMRPC requests that the Court preclude Plaintiff from referencing or submitting evidence or argument on compensatory, punitive, or liquidated damages during jury selection, opening statement, trial, or during closing arguments. (Doc. 63 at 3.) Plaintiff did not concur in this motion only as it relates to liquidated damages. (Doc. 63-1 at 1; Doc. 76 at 1-2.) Therefore, Defendant PMRPC's motion will be granted as it relates to compensatory and punitive damages.

Under the ADEA, the availability of liquidated damages is addressed in 29 U.S.C. § 626(b) which specifically provides that "liquidated damages shall be payable only in cases of willful violations." As explained in *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366 (3d Cir. 2004),

> [t]he ADEA incorporates the enforcement powers, remedies, and procedures of the Fair Labor Standards Act ("FLSA") set forth in 29 U.S.C. §§ 211(b), 216 (except for subsection (a)), and 217. 29 U.S.C. § 626(b). The enforcement provision of the FLSA expressly provides for imposition of liquidated damages payable "in cases of willful violations of this chapter." 29 U.S.C. § 626(b). The FLSA further provides that "[a]ny employer who violates [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Thus, when a jury finds that an employer willfully violated the ADEA, the basic damages award may be doubled under this liquidated damages provision.

357 F.3d at 372.

The willfulness standard was addressed in *Kelly v. Matlack, Inc.*, 903 F.2d 978 (3d Cir. 1990):

> This court confronted the standard of conduct to be applied to the willfulness determination in *Dreyer v. Arco Chemical Co.,* 801 F.2d 651 (3d

8

> Cir.1986), *cert. denied,* 480 U.S. 906, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987). We found guidance in the opinion of the Supreme Court in *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), where the Court stated that Congress intended "a two-tier liability scheme" and that double damages should not be awarded in every ADEA case. *Thurston,* 469 U.S. at 128, 105 S.Ct. at 625. The standard for willfulness for liquidated damages announced in *Thurston* looked to whether the employer "knew or showed reckless disregard for" whether its conduct in promulgating a corporate policy had a disparate impact on protected employees. *Id.* In *Dreyer,* we reasoned that the *Thurston* standard "is not easily incorporated in cases alleging disparate treatment in a discrete employment situation" because in such situations, which necessarily involve intentional conduct, the employer will have known or should have known that the conduct violated the Act. *Dreyer,* 801 F.2d at 656–58. We concluded that in order to effectuate the two-tiered standard to sustain liquidated damages "there must be some additional evidence of outrageous conduct." *Id.* at 658 (adopting the standard of the Restatement (Second) of Torts § 908(2) for punitive damages).

903 F.2d at 981–82. *Kelly* further explained that the standard does not "impos[e] a quantitative requirement for a finding of willfulness" and a qualitative analysis is also applied. *Id.* at 982.

> Although willfulness will probably be proved in most cases by evidence additional to that required to show an ADEA violation, in an appropriate case, one act, if it meets the qualitative standard, could show both intentional age discrimination and willfulness. *See Dreyer,* 801 F.2d at 658 ("The circumstances of the violation itself may be so egregious ... that double damages may be warranted."). We suggested looking at "'the character of the defendant's act, [and] the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause.'" *Id.* (quoting Restatement (Second) of Torts § 908(2) (test for punitive damages)).

*Kelly,* 903 F.3d at 982.

A determination of willfulness generally requires an inquiry into the specific circumstances of the case, but merely providing a pretextual reason for termination is

9

insufficient evidence of willfulness. *Id. Kelly* noted that the following scenarios might show willfulness:

> (1) where evidence exists that shows that the employer had previously violated the ADEA; (2) where the termination of the employee came at a time when it would deprive him or her of a pension; or (3) when the circumstances of the violation itself were egregious, as in the systematic purging of older people from the employee staff.

903 F.2d at 982 n.2 (citing *Dreyer*, 801 F.2d at 658).

Defendant PMRPC asserts that Plaintiff will not be able to set forth any evidence to indicate a willful violation of the ADEA when it terminated Plaintiff. (Doc. 64 at 4.) Plaintiff responds that he has produced evidence that he was terminated at a time that deprived him of his pension and he has shown evidence of systematic purging of older people. (Doc. 76 at 4-5.) While Defendant PMRPC discounts Plaintiff's proffered evidence in its reply brief (Doc. 84 at 4-5), the Court concludes that the a determination regarding willfulness raises issues that are best addressed in the context of trial where the resolution of questions of foundation, relevancy, and potential prejudice can be considered in proper context. *Walden*, 126 F.3d at 518 n.10; *Leonard*, 981 F. Supp. 2d at 276.

## IV. CONCLUSION

For the reasons discussed above, the Motion in Limine of Defendants Relative to Improper and Unsupported Damages (Doc. 63) filed by Defendant PMRPC will be granted in part and denied in part. The motion will be granted as it pertains to compensatory and punitive damages. The motion will be denied as it pertains to liquidated damages. The denial will be with prejudice as to Defendant PMRPC's request to preclude Plaintiff from

referencing liquidated damages in the pre-evidentiary phases of the trial, i.e., during jury selection and opening statements. The denial is otherwise without prejudice. A separate Order is filed simultaneously with this Memorandum Opinion.

                                                                               _____
                                                                               Robert D. Mariani
                                                                               United States District Judge