THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT BASHORE,

   Plaintiff,

  v.

POCONO MOUNTAIN REGIONAL
POLICE COMMISSION, et al.,

   Defendants.

: CIVIL ACTION NO. 3:18-CV-425
: (JUDGE MARIANI)

## MEMORANDUM OPINION

Here the Court considers the Motion in Limine of Defendant, Pocono Mountain Regional Police Officers Association ("Association") (Doc. 69). With the motion, Defendant Association requests that the Court preclude Plaintiff from introducing any testimony or evidence concerning any damages as they pertain to the Association's alleged violation of the duty of fair representation because Plaintiff's remedy here is limited solely to *nunc pro tunc* arbitration. (Doc. 69 at 3-4.) For the reasons discussed below, the Court will deny Defendant Association's motion.

### I. BACKGROUND

On December 28, 2018, Plaintiff filed the above-captioned action after he was terminated from his position as a police officer with the Pocono Mountain Regional Police Commission ("PMRPC"). (Doc. 1.) As set out in the Statement of Undisputed Material Facts contained in the Court's Memorandum Opinion addressing the Pocono Mountain

Regional Police Commission's Motion for Summary Judgment (Doc. 34), Plaintiff injured his right hip, right knee, and right hand in a prisoner take down incident in July 2016 and was unable to work until November 1, 2016. (Doc. 50 at 2-3.[1]) On August 5, 2016, PMRPC and its workers' compensation insurance carrier issued a Notice of Temporary Compensation Payable. Plaintiff was paid workers' compensation benefits. On October 20, 2016, Plaintiff was provided clearance by Mountain View Orthopedics to return to work on November 1, 2016. Plaintiff was released to full duty by his orthopedic physician.

Upon his return to work, Plaintiff had to update his weapons qualification. Sergeant David Poluszny, the Department's Firearms Instructor, was present for Plaintiff's November 2016 weapons qualification efforts and was aware that Plaintiff was qualifying in November 2016 because he had been returned to work on November 1, 2016.

Plaintiff was told by Sergeant Poluszny that he failed two weapons qualification attempts on November 2, 2016, and that he failed on November 3, 2016. Plaintiff was not told his scores. After Chief Wagner was notified that Plaintiff failed the weapons qualifications, Plaintiff was placed on light duty. Chief Wagner's Record of Employee Conference dated November 4, 2016, does not state that Plaintiff failed the test for not attaining an 80% score (240) on his weapons qualification. Plaintiff testified that Chief

---

[1] Additional background information is taken from the Summary Judgment Memorandum Opinion's Statement of Undisputed Material Facts (Doc. 50 at 2-11) unless otherwise cited in the text.

Wagner told him he would have to obtain outside training by the National Rifle Association at his own expense.

Plaintiff was put on desk duty from November 7, 2016, to November 11, 2016, and then returned to the range for a qualification attempt with Sergeant Posluszny. Plaintiff was told he had failed again and had scored 236. Plaintiff said he only needed a 225 (75%), but Sergeant Posluszny told him he needed a 240 (80%). Plaintiff testified that he has never seen any document at the PMRPD that indicates a minimum pass/fail test score is 225, the MPOETC standard.

Plaintiff was removed from duty on November 16, 2016, by Chief Wagner on the alleged basis that he did not pass his weapons qualification pursuant to Policy 6-3 (Weapons Qualification), Subsection (III)(E)(5). An executive session of the Commission was held on the same day. Chief Wagner's letter states that "the outcome of the meeting was that we are bound by policy as set." (Doc. at 5 (quoting Plaintiff's Counter-Statement of Material Facts ("PCSMF") Doc. 41 ¶ 19).) The only written policy set by the Commission was under PMRPC Policy 6-3 (Pl.'s Ex. #10 (Doc. 43-10)) and PMRPC Policy 5-1 (Pl.'s Ex #5 (Doc. 43-5)). The department's alleged unwritten policy of a 240 passing score, which differed from MPOETC standard of 225, was not a written a policy of the Commission at the relevant time. The Commission required Plaintiff to successfully qualify within thirty (30) days after having received remedial firearms training from an outside source. Chief Wagner's letter to Plaintiff dated November 16, 2016, relieving him of duty for allegedly

3

failing his weapons qualification test does not state that Plaintiff failed the test for not attaining an 80% score on his weapons qualification.  Chief Wagner testified that being relieved of duty means Plaintiff was on unpaid status and was not to report to work.

Plaintiff returned to his doctor on November 17, 2016, and was taken out of work again.  He provided the work restriction to Chief Wagner who admitted that he would have been aware that the Plaintiff was placed back on full restrictions the day after November 16, 2016, by his doctor for acquired trigger finger.  Chief Wagner testified that he did not recall any discussions with Plaintiff as to how he would undergo remedial firearms training within 30 days based on his medical restrictions specifically for his right hand, and he stated there was no policy for such a scenario.

Plaintiff's counsel sent a letter to the PMRPD dated November 23, 2016, enclosing a copy of a Petition for Penalties filed with the Pennsylvania Department of Labor & Industry, Bureau of Workers' Compensation filed on November 23, 2016, alleging that Defendant refused to pay benefits to the Claimant and instead informed him that his claim was denied.

A Loudermill Hearing was held on November 23, 2016.  Defendant's Loudermill Hearing Notice to Plaintiff notified him that the issues to be addressed were: (1) Policy 6-3 Weapons Qualification, and (2) Failure to qualify with your primary service handgun on 11/1/16, 11/2/16, 11/3/16 and 11/11/16.

Plaintiff was terminated on December 26, 2016, although he had been out of work due to his work injury from November 17, 2016, through his date of termination.  He was

fifty-eight (58) years old at the time and had twenty-three (23) years of continuous employment and service with the PMRPC. Sergeant Poluszny testified that it was the first time a police officer did not qualify and was terminated. (PCSMF Doc. 41 ¶ 34; DAPCSMF Doc. 49 ¶ 34.)

At the time of his termination, Plaintiff was less than two years from his retirement eligibility for being over 50 years of age and having 25 years of service. As such, he would have been entitled to Pension Benefits due to his age being over 50 and having attained 25 years of service. Plaintiff would also have been entitled to Post-Retirement Health Care at 50% premium.

On January 4, 2017, an Order was issued by the Honorable Alan Harris, Workers' Compensation Judge, stating the following: "AND NOW, following a hearing which took place on December 28, 2016, and upon finding that Claimant's benefits were suspended in violation of law, it is ordered that Claimant's benefits be reinstated as of October 12, 2016." (PCSMF Doc. 41 ¶ 29; Doc. 49 DAPCSMF ¶ 29.)

The Association is the exclusive collective bargaining representative of the Commission Police Officers. (Doc. 6 ¶ 55.) Plaintiff was a member of the Association at all relevant times. (Doc. 1 ¶ 56.) According to Plaintiff, he requested that the Association grieve his termination from employment, the Association failed to file any grievance or request for arbitration on Plaintiff's behalf, and the Association failed and/or refused to

respond to Plaintiff's request to grieve his termination. (Doc. 1 ¶¶ 57-59.[2]) Plaintiff's Complaint alleges the following:

> 61. It is belief [sic] and averred that the Association and its representatives harbored animosity towards the Plaintiff, who was known to be disliked by Chief Wagner due to Plaintiff's age and injuries sustained while working, that manifested itself as a material factor in the handling, or lack or refusal to handle, his grievance.
>
> 62. It is believed and therefore averred that the Association failed to hold a vote on whether to arbitrate the Plaintiff's termination so as to remain in the good graces of Chief Wagner, the Department and Commission.
>
> 63. The Association has failed to properly investigate the circumstances underlying the Plaintiff's termination and has not taken any steps to make an informed decision on whether to arbitrate the Plaintiff's grievance.
>
> 64. The Associations actions and inactions exceed mere negligence or poor judgment.
>
> 65. By its aforementioned actions and inactions, the Association discriminated against the Plaintiff.
>
> 66. By its aforementioned actions and inactions, the Association has breached its duty of fair representation to the Plaintiff.
>
> 67. For these reasons, the Defendant must be compelled to arbitrate the grievance regarding the Plaintiff's termination.

(Doc. 1 at 11-12.[3])

---

[2] Defendant Association disagrees with these statements. (Doc. 6 ¶¶ 57-59.) Defendant Association did not file any dispositive motions.

[3] Defendant Association either denies these allegations or considers them conclusions of law to which no responsive pleading is required. (Doc. 6 ¶¶ 61-67.)

Plaintiff's requested relief includes the following: compelling the Association and PMRPC to arbitrate Plaintiff's termination; providing Plaintiff with legal representation at the Association's expense to represent him in the arbitration proceeding; award Plaintiff compensatory damages against the Association in excess of $50,000; and award Plaintiff punitive damages based on its intentional actions in excess of $50,000. (*Id.* at 12.)

In the Court's March 23, 2020, Memorandum Opinion (Doc. 50), the Court granted summary judgment on Plaintiff's wrongful discharge claim and denied summary judgment on his Age Discrimination in Employment Act claim. (Doc. 50 at 27.) Therefore, two claims remain—Count I Age Discrimination in Employment Act claim against the Pocono Mountain Regional Police Commission and Count III Breach of Duty of Fair Representation claim against Pocono Regional Police Officer's Association which was not the subject of a summary judgment motion. (Doc. 1 ¶¶ 31-43, 54-67.)

Trial is set to commence on September 20, 2021. (Doc. 97.) The parties have filed numerous motions in limine (Docs. 57, 61, 63, 65, 67, 69), including Defendant Association's motion at issue here, which are all ripe for disposition.

## II. STANDARD OF REVIEW

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *United States v. Tartaglione*, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017). A court may exercise its discretion to rule in limine on evidentiary issues "in appropriate cases." *In re Japanese Elec. Prods.*

7

*Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  Nevertheless, a "trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *Tartaglione*, 228 F. Supp. 3d at 406.  "[I]n limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial."  *Ohler v. United States*, 529 U.S. 753, 758 n.3, 120 S. Ct. 1851, 146 L. Ed. 2d 826 (2000).  The Supreme Court has long recognized that "[a] reviewing court is handicapped in an effort to rule on subtle evidentiary questions outside a factual context." *Luce v. United States*, 469 U.S. 38, 41 (1984).  Thus, a district court's ruling on a motion in limine "is subject to change when the case unfolds." *Id.*  While this is particularly so if the actual testimony at trial differs from what was anticipated in a party's motion in limine, but "even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Id.* at 41-42.

Further, while motions in limine may serve as a useful pretrial tool that enables more in-depth briefing than would be available at trial, a court may defer ruling on such motions "if the context of trial would provide clarity." *Frintner v. TruePosition*, 892 F. Supp. 2d 699, 707 (E.D. Pa. 2012).  Indeed, "motions in limine often present issues for which final decision is best reserved for a specific trial situation." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 518 n.10 (3d Cir. 1997).  Thus, certain motions, "especially ones that encompass broad

classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context." *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013). Moreover, "*pretrial* Rule 403 exclusions should rarely be granted. . . . [A] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990) (emphasis in original).

### III. ANALYSIS

As set out above, with this motion Defendant Association requests that the Court preclude Plaintiff from introducing any testimony or evidence concerning any damages as they pertain to the Association's alleged violation of the duty of fair representation because Plaintiff's remedy here is limited solely to *nunc pro tunc* arbitration. (Doc. 69 at 3-4.) Defendant Association first asserts that because Plaintiff is a public sector employee his duty of fair representation ("DFR") claim is governed by state law. (Doc. 70 at 2.) Defendant Association further asserts that, "[i]n Pennsylvania, the *sole* remedy available to Plaintiff for an alleged breach of DFR is an order requiring that the grievance be processed to arbitration *nunc pro tunc*." (*Id.* at 3 (citing *Martino v. Transport Workers Union Local 234*, 480 A.2d 242 (Pa. 1984)).) Plaintiff does not refute Defendant Association's position that his DFR claim is governed by state law but disagrees with the proposition that the only remedy available under state law is an order requiring that the grievance be processed to

9

arbitration *nunc pro tunc*. (Doc. 82 at 1-2 (citing *Plouffe v. Gambone*, Civ. A. No. 11-6390, 2012 WL 2343381 (E.D. Pa. June 20, 2012)).)

> In *Martino*, the Supreme Court of Pennsylvania held that
>
>> before a court in equity may entertain a complaint seeking to order arbitration, the complainant must prove that the union acted in bad faith towards its member. Once it has been determined that the union breached its duty of fair representation, the Court of Common Pleas sitting in equity many order the completion of the arbitration procedure and, in cases governed by state labor law its power is limited to that remedy. The only matter before the arbitrator would be to determine whether or not the complainant was wrongfully discharged and to apportion damages for backpay in a manner consistent with this opinion, if the arbitrator concludes backpay is warranted. Under this procedure, a wrongfully discharged employee receives precisely the treatment all the employees in the unit are entitled to under the collective bargaining agreement.

480 A.2d at 252.

The Commonwealth Court of Pennsylvania considered a police officer's claim against his union for the duty of the breach of fair representation where the trial court had

> granted summary judgment on the ground that [the Pennsylvania] Supreme Court's decisions in *Martino v. Transport Workers' Union of Philadelphia, Local 234*, 505 Pa. 391, 480 A.2d 242 (1984), and *Ziccardi v. Commonwealth*, 500 Pa. 326, 456 A.2d 979 (1982), bar a public employee from suing his employer for breach of a labor contract and limit his remedy against his union to *nunc pro tunc* grievance arbitration, absent proof of conspiracy or collusion between the employer and the union or active participation by the employer in the union's breach of its duty of fair representation.

*Garzella v. Borough of Dunmore*, 62 A.3d 486, 489 (Pa. Commw. Ct. 2013). Because there was no evidence that the employer and the union conspired or colluded to deny the employee's rights under the Act 111 Contract or that the employer participated in the

10

union's breach of its duty of fair representation, *Garzella* affirmed the trial court's grant of summary judgment. *Id.*

As to the plaintiff's claim against his union, the Commonwealth Court reasoned as follows:

> While a public employee may sue his union for breach of its duty of fair representation, unless the employee proves active participation by the employer in the union's bad faith, or conspiracy or collusion between the employer and union, the employee's only remedy against the union is an order for *nunc pro tunc* arbitration of his grievance. *Martino,* 505 Pa. at 408–10, 480 A.2d at 251–52; *Runski* [*v. American Federation of State, County and Municipal Employees Local 2500*, 598 A.2d 347, 350 (Pa. Commw. Ct. 1991)]; *Reisinger* [*v. Department of Corrections*, 568 A.2d 1357, 1360 (Pa. Commw. Ct. 1990)]. Absent a showing of active participation, conspiracy or collusion by the employer, the court may determine whether the union breached its duty of fair representation and "order the completion of the arbitration procedure," but "in cases governed by state labor law its power is limited to that remedy." *Martino,* 505 Pa. at 409–10, 480 A.2d at 252.

*Garzella*, 62 A.3d at 494. Thus, the issue for the Commonwealth Court to decide was whether the plaintiff showed by specific facts that the employer actively participated in the union's refusal to file his grievance or that the employer and the union had colluded or conspired with respect to the employer's allegedly wrongful action or the union's refusal to file the grievance. *Id.*

Defendant Association recognizes these exceptions to the general rule (Doc. 70 at 3 n.1) and states that "Plaintiff has established no facts to support any of the required participation or conspiracy." (*Id.*) Insofar as Defendant Association suggests that the Court should preclude Plaintiff from eliciting evidence at trial which could give rise to a remedy

11

against Defendant Association beyond a *nunc pro tunc* order for arbitration of his grievance, the Court finds that the conclusory statement regarding "facts established" (Doc. 70 at 3 n.1) is insufficient to support preclusion of evidence on the issue at trial. Further, the testimony and evidence presented at trial will provide a basis to rule on whether Plaintiff should be allowed to offer or adduce testimony or evidence regarding damages associated with his DFR claim beyond an order for *nunc pro tunc* arbitration.[4]

### IV. CONCLUSION

For the reasons discussed above, the Court will deny the Motion in Limine of Defendant, Pocono Mountain Regional Police Officers Association ("Association") (Doc. 69). Nothing in this Memorandum Opinion should be construed or understood to mean that Defendant Association may not invoke Federal Rule of Civil Procedure 50(a) to assert the claim that Plaintiff has failed to show active participation, conspiracy, or collusion by Defendant PMRPC in the Union's putative breach of the duty of fair representation for the purpose of showing that he is entitled to damages. A separate Order is filed simultaneously with this Memorandum Opinion.

Robert D. Mariani
United States District Judge

---

[4] In so finding, the Court rejects Plaintiff's reliance on *Plouffe* to the extent that he cites the case for the proposition that damages beyond an order for *nunc pro tunc* arbitration are available absent a showing of active participation, conspiracy, or collusion by the employer (*see* Doc. 82 at 2-4) as such a proposition is not supported by Pennsylvania law cited in the text which governs this case.

12